CHENEY, COMMR. *v.* TOLLIVER.

5-2650          356 S. W. 2d 636

Opinion delivered April 9, 1962.

[Rehearing denied May 21, 1962.]

*Lyle Williams,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

Ed. F. McFaddin, Associate Justice. The Commissioner of Revenues of Arkansas[1] charged that C. E. Tolliver owed the State a sizeable sum for gross receipts tax on proceeds received from coin-operated music machines. After exhausting administrative remedies, Tolliver filed this proceeding in the Poinsett Chancery Court to cancel the Certificate of Indebtedness filed against him by the Commissioner of Revenues in Poinsett County. Venue and jurisdiction are not questioned. See *Fish* v. *McLeod*, 206 Ark. 142, 174 S. W. 2d 236. The Chancellor delivered a written opinion which we copy *in extenso* because he reached the correct conclusion:

### "MEMORANDUM OPINION

#### "*STATEMENT*

"This is an action by the plaintiff to cancel and hold invalid a 'Certificate of Indebtedness' on record in the office of the Circuit Clerk in Poinsett County. The certificate was filed by the Commissioner of Revenues deemed to be under the authority of the Arkansas Gross Receipts Act of 1941 and amendments thereto. The plaintiff also seeks to enjoin the Commissioner from filing any future claims based on the Act as it now stands. The plaintiff claims the Act does not apply to his enterprise.

#### "*FACTS*

"The plaintiff owns a number of automatic mechanical music machines which are placed in various establishments of others all located in Poinsett County, Arkansas. The machines are activated by alleged lovers of music by placing coins in slots. The coin is then forced along a track within this slot and in turn throws an electrical switch giving life to the machine. The machine also has an electronic brain, which if properly activated by our alleged music lover, will attempt to emit sounds shown by an index of selections.

"According to the stipulated facts, between a period dating from 1 July 1957 and ending 30 June 1960, the

---

[1] During the Chancery litigation and appeal to this Court, J. Orville Cheney was Commissioner of Revenues. Now Ted Donham is Commissioner, and has been duly substituted as appellant.

plaintiff's gross receipts from his machines totaled to a sum of $84,514.51, and that during this period no sales tax was remitted under the Act in question. The Commissioner then caused the certificate to be filed alleging therein that the sum of $2,535.44 was due for sales tax and a penalty of ten per cent amounting to $243.54. Thereafter plaintiff exhausted his administrative rights and now seeks the aid of the Courts.

## "THE ACTS

"The Acts are compiled as Sections 84-1901 through 84-1929 Arkansas Statutes volume 7-B. Section 84-1903 reads as follows:

" 'THREE PER CENT TAX LEVIED — There is hereby levied an excise tax of three per centum (3%) upon the gross proceeds or gross receipts derived from all sales to any person. . . .

" '(e) The sale of tickets or admissions to places of amusement, to athletic, entertainment, recreational events, or fees for the privilege of having access to or the use of amusement, entertainment, athletic or recreational facilities. . . .'

"In Section 84-1902 it defines the word 'sale' as follows:

" '(C) . . . The term "Sale" shall include also the sale, giving away, exchanging or other disposition of admission, dues or fees to clubs, to places of amusement, recreational, or athletic events, or for the privilege of having access to the use of amusement, recreational, athletic or entertainment facilities.'

## "CONSIDERATION OF THE ISSUES

"For the issues to be resolved, the court must determine the implications raised by the above two sections.

"Q. Do they cover the proceeds derived from Automatic Mechanical Music Machines?

"To do this, the court will first analyze the section which levies the tax. What does it levy the tax on?

"1. The sale of tickets and admissions to,
   a. Places of amusement.
   b. To athletic events.
   c. To places of entertainment.
   d. To recreational events.

"2. It also levies on fees for the privilege of one having access to or the use of,
   a. Amusement facilities.
   b. Entertainment facilities.
   c. Athletic facilities.
   d. Recreational facilities.

"Note: (this section does not make a levy on 'Dues' unless they are free or complimentary)

"3. The defining section as to what shall consist a 'sale' are admissions, dues and fees,
   a. To clubs.
   b. To places of amusement.
   c. To recreational events.
   d. To athletic events.

Note: (this part omits anything pertaining to 'entertainment')

"This section also defines a 'sale' as being any admission, dues or fees for the privilege of access to or use of,
   A. Amusement facilities.
   B. Entertainment facilities.
   C. Recreational facilities.
   D. Athletic facilities.

"The court feels that the only possible part of this Act that could be directed toward the issues in the case at bar is as follows:

" '. . . fees for the privilege of having access to or the use of amusement, entertainment . . . facilities . . .'

(84-1903 Arkansas Statutes)

"In Webster's New Collegiate Dictionary, it defines the word 'Privilege' as:

"1. A right or immunity granted as a peculiar advantage or favor.

2. A personal right, in derogation of common rights.

3. A prerogative (a right to exercise a power to the exclusion of others).,

"It defines a 'facility' as:

"1. A thing that promotes the ease of any action, operation, or course of conduct. (see also 35 CJS pg. 488)

2. Facilities can also be animate beings, such as persons, people and groups thereof. It is not restricted to inanimate things. (see 35 CJS 489)

"The dictionary defines the word 'Access' as:

"1. Approach, admittance, admission.

"It defines the word 'Use' as:

"1. Act of employing anything or state or being employed.

"The words 'entertainment and amusement' are synonymous, meaning:

"1. That which engages the attention of agreeably or to occupy pleasurably.

"Reading the Act as a whole the only reasonable conclusion the court can arrive at is this:

"1. When the Act refers to entertainment and amusement facilities, it is considering a place where admission, dues and fees are paid for one to enter and attend. Having been granted this privilege the customer may then have access and the use of the facilities therein made available to him.

"In *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81, it was said:

" 'It is the general rule that a tax cannot be imposed except by express words indicating that purpose. The intention of the Legislature is to be gathered from a consideration of the entire act, and where there is ambiguity or doubt it must be resolved in favor of the taxpayer and against the taxing power.'

"It would have been very simple for the act the Legislature compiled to have named the Automatic Music Machine as such, had they intended to include them. They did so in Section 84-2604 Arkansas Statutes as follows:

" 'There is hereby imposed . . . a privilege tax for the operation of coin operated machines and vending machines, including automatic music vending phonographs . . .'

"If one must be pleasurably and agreeably occupied to be entertained and amused, how will we allow for music which is sad and depressing?

### *"CONCLUSION*

"The court finds that no gross receipts tax is levied upon the proceeds from automatic music machines as the act now stands. Therefore, the 'Certificate of Indebtedness' filed by the defendant Commissioner against the plaintiff and his property, in the office of the Circuit Clerk of Poinsett County, Arkansas, is hereby deemed void and shall be expunged from said records; that the defendant Commissioner is hereby enjoined from filing any other certificates or taking any action for the collection of this tax. Costs are adjudged against the defendant Commissioner in his official capacity. Precedent will be prepared to conform herewith.

"19 September 1961

"Gene Bradley
"Chancellor"

We do not deem it necessary to add anything to the Chancellor's opinion concerning the application of Act No. 386 of 1941, as his reasoning is clear and sound. However, the appellant also relies most strongly on Act

No. 120 of 1959, which appellant claims to be a Legislative recognition that the Gross Receipts Act applies to coin-operated machines like those in this case; and we now consider said Act No. 120 with relation to the facts in the case at bar. The Act No. 120 was captioned "AN ACT to License and Regulate The Operation of Amusement Games, The Levying of a Tax Therefor, And For Other Purposes." Section 4 of the Act No. 120 levied an annual privilege tax of $250.00. Section 6 required that any licensee under the Act must, within ten days from the purchase or lease of such amusement device, present evidence to the Revenue Commissioner that the sales tax has been paid on the machine leased or purchased. Section 7 of Act No. 120 is the section strongly relied on by the Commissioner. That Section reads:

"In all cases where a licensee hereunder leases amusement devices to others, it shall be the duty of the licensee to keep records of the amount of rent received by the licensee and the amount retained by the lessee and to furnish carbon copies of such records to the lessee. *It is the duty and obligation of the licensee to ascertain the amount of sales tax due on the receipts of the machine and to withhold the amount of such tax from such receipts and to remit same to the Arkansas Revenue Department. The amount of such sales tax shall not be taken into consideration in determining the rent due the licensee.* All records required to be kept by the licensee under the provisions of this Act shall be made available to the Arkansas Revenue Commissioner within a reasonable time after request or the license of the offending licensee may be revoked as provided herein." (Emphasis our own.)

We have italicized the portion of the Act upon which the appellant most strongly relies. We construed this Act in the recent case of *Brown* v. *Cheney,* 233 Ark. 920, 350 S. W. 2d 184. The said Act No. 120 levied a privilege tax on coin-operated machines like the ones in

the case at bar.[2] But the said Act No. 120 does not in Section 7 above, or in any other section, levy a gross receipts tax on the money received in the operation of the said machines. Taxes are not levied by implication. The only tax levied by Act No. 120 was a privilege tax. The Act does say that the owner or operator of a machine should "ascertain the amount of sales tax due on the receipts of the machine and to withhold the amount of such tax from such receipts and remit same to the Arkansas Revenue Department." But, by the italicized language (as well as other language in the Act) the Legislature was saying that the operator should perform those tasks if and when there should be a gross receipts or sales tax levied against the money received in the operation of the machine. The Act No. 120 did not levy the sales tax or gross receipts tax or say anywhere that a gross receipts tax or sales tax was levied against the money received from the operation of said machine. The Act No. 120 merely stated what the operator would have to do if and when a gross receipts tax was levied, but such tax has not yet been levied, as shown by the Chancellor's Opinion. And what the Chancellor quoted from *Wiseman* v. *Arkansas Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81, is *apropos* here:

"It is the general rule that a tax cannot be imposed except by express words indicating that purpose. The intention of the Legislature is to be gathered from a consideration of the entire act, and where there is ambiguity or doubt it must be resolved in favor of the taxpayer, and against the taxing power."

If the Legislature had desired to levy a gross receipts tax or sales tax against the proceeds received in the operation of these coin-operated music machines, all the Legislature would have had to say was that such gross

---

[2] It must be borne in mind that the tax sought to be collected by the Commissioner in the case at bar covered the period from July 1, 1957 through June 30, 1960, and the Act No. 120 of 1959 certainly could not retroactively apply in any event to receipts before the effective date of the Act.

receipts tax was levied. We find no such language in the Act No. 120.

Affirmed.

HARRIS, C. J., and WARD & JOHNSON, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. Section 84-1903 levies an excise tax of three per cent on gross receipts derived from all sales to any person subsequent to the effective date of the act. The pertinent portion, as mentioned by the Majority, reads as follows:

"(e) The sale of tickets or admissions to places of amusement, to athletic, entertainment, recreational events, or[1] fees for the privilege of having access to or the use of amusement, entertainment, athletic or recreational facilities, . . ."

The use of the word "or" is quite significant, because, to me, this language definitely levies a tax on sales in addition to ticket sales occasioned by attendance at an athletic or recreational event. The coin inserted into the music machine *gives access to* the use of an amusement facility. The coin is inserted into the box solely because the individual doing so wants to be amused—he is amused or entertained by the record he hears; that is the purpose of a music machine—to amuse or entertain, and it is an amusement facility. It is readily apparent that the Majority and I are in disagreement over the meaning of the word "entertainment", for they cite the definition of "entertainment" as "that which engages the attention of agreeably or to occupy pleasurably", and then state:

"If one must be pleasurably and agreeably occupied to be entertained and amused, how will we allow for music which is sad and depressing?"

I am unable to comprehend the logic of this statement, for I do not understand that music must emotionally move one to gleefully jump up and down before it can be considered entertaining. "Tara's Song" (theme song of "Gone With the Wind"), certain religious hymns, and

---

[1] Emphasis supplied.

many of the classic numbers written by Stephen Foster, such as "My Old Kentucky Home", "Beautiful Dreamer", and "I Dream of Jeanie With the Light Brown Hair", leave one somewhat melancholy, but would anyone say that because of this, the listener is not entertained or agreeably occupied, when hearing these selections beautifully rendered? Some of the outstanding motion pictures and TV performances leave one sad— but does this keep the viewer from being entertained? The answer is too obvious for further comment.

I personally find no room to doubt that the Legislature, under the language of the statute quoted, definitely included music machines in levying the tax. The actual intent of the legislature is made even more obvious by the passage of Act 120 of 1959. The Majority quote from Section 7 of that act as follows:

"It is the duty and obligation of the licensee to ascertain the amount of sales tax due on the receipts of the machine and to withhold the amount of such tax from such receipts and to remit same to the Arkansas Revenue Department. The amount of such sales tax shall not be taken into consideration in determining the rent due the licensee."

Section 11 of that same act reads as follows:

"Prior to the issuance or renewal of any license hereunder, the Revenue Commissioner shall require the applicant to procure a suitable surety bond in the principal sum of $3,000.00 to insure the faithful and prompt payment of all sales tax, use tax or privilege tax which may become due in connection with the operation of the licensed business and to secure the faithful performance of all duties and obligations imposed by this Act."

I certainly cannot, under any stretch of the imagination, understand why the legislature will provide the manner of collecting the sales tax—and even further, require a surety bond to insure the prompt payment of all sales tax, if, as the Majority say, "the legislature was saying that the operator should perform those tasks *if and*

*when*[2] there should be a gross receipts or sales tax levied against the money received in the operation of the machine.'' Never before have I heard of a legislature passing an act providing for the collection of a tax, and providing further that a bond shall be posted for that purpose, purely in contemplation of the fact that some future legislature might desire to levy such a tax. What would be the purpose of ''pre-tax'' legislation? Any future General Assembly in enacting such a measure, can well include the discussed language in any act passed —and, of course, is not bound by the language of the previous legislature. In other words, I find not one scintilla of explanation for the legislature to use the discussed language in Act 120 for the reason stated by the Majority.

Sales tax is payable on gas, electricity, water, ice, steam, or any other utility or public service except transportation services. The tax is chargeable on service by telephone and telegraph companies, hotel, apartment, and motel rooms, printing, photography, automobiles, and sales of practically all tangible personal property, even to such necessities as bread, milk, medicines, and drugs. Under the Majority holding, though all of these items are taxed, the legislature saw fit to exempt the ''juke-box''. I am convinced that the language of Section 84-1903 levies a tax on the machines in question, and the Revenue Department should be permitted to collect such a tax.

I therefore respectfully dissent.

Paul Ward, Associate Justice, dissenting.

In my judgment the majority opinion is indefensible.

It goes at length into a discussion of the meaning of the several sub-sections of Ark. Stats. § 84-1903 which have no relevancy to the question under consideration. The only part of the section which need to be considered reads as follows:

''There is hereby levied an excise tax of three per centum (3%) upon . . . fees for the privilege of

---

[2] My emphasis.

984

having access to or the use of amusement, [or] entertainment . . . facilities . . .''

It makes a strained attempt to explain why a juke box is not an ''amusement'' or an ''entertainment'' facility.

It laboriously explains that Act 120 of 1959 does not place a sales tax on juke boxes. Of course it doesn't, and no one has contended it does. I am firmly convinced the legislature would not have (in Act 120) made provisions for collecting a tax on juke boxes if it had not already placed (by § 84-1903) a tax on them. The majority adroitly evade the above by saying: ''The Act No. 120 merely stated what the operator would have to do if and when a gross receipts tax was levied.'' The simple and direct answer to the above statement is that Act 120 does not so state. Moreover, it makes such more sense to me to conclude the legislature (in passing Act 120) had in mind a tax already levied than a tax which *might* some day be passed.